UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-CV-344-JMH

MICHAEL STEPHEN LANCELLOTTI,                                              PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

BUREAU OF PRISONS, et al.,                                              DEFENDANTS

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Plaintiff Michael Stephen Lancellotti ("Lancellotti"), an individual in custody of the Federal Bureau of Prisons ("BOP") and formerly incarcerated at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington")[1], filed this action under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), naming as defendants the BOP and a contract physician, Ali H. Mesiwala, M.D., in Pomona, California. Lancellotti has amended his complaint to name as additional defendants an unnamed hospital in San Bernardino, California; A. Eddleman; Lexington Medical Center; and the University of Kentucky Medical Center.

Since Lancellotti has been granted *in forma pauperis* status and is asserting claims against government officials, the Court now screens his Complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B) and *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).[2] For the

---

[1] Lancellotti has been transferred to the Federal Correctional Institution in Terminal Island, California ("FCI-Terminal Island").

[2] A *pro se* pleading is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). But the Court must dismiss a case at any time if it determines the action is frivolous,

reasons stated below, the court will dismiss a portion of Lancellotti's claims without prejudice to his right to refile those claims in state court, but will allow his *Bivens* claim to proceed.

## CLAIMS

Lancellotti claims that the BOP has been deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment right to be free from cruel and unusual punishment, by failing to honor his request to be transferred to Mayo Clinic in Rochester, Minnesota, for additional, reconstructive surgery to correct the medical problems associated with the previous cervical spinal surgery performed by a contract physician, Dr. Ali H. Mesiwala, in Pomona, California, on February 13, 2008.[3] Lancellotti appears to be asserting medical malpractice/negligence claims against Dr. Mesiwala and the remaining defendants: an unnamed hospital in San Bernardino, California; A. Eddleman; Lexington Medical Center; and University of Kentucky Medical Center.

## RELIEF SOUGHT

Lancellotti seeks injunctive relief and $5 Million in compensatory damages from each named defendant: a hospital in San Bernardino, California; Dr. A. H. Mesiwala; A. Eddleman; Lexington Medical Center; University of Kentucky Medical; and the BOP.

## DISCUSSION/ANALYSIS

**A.**  ***Bivens* claim**

---

malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

[3] Apparently, this surgery occurred at a hospital in San Bernardino, California, prior to Lancellotti's transfer to FMC-Lexington.

2

To state a claim that is cognizable as a *Bivens* action under 28 U.S.C. § 1331, a plaintiff must plead and prove two essential elements. He must show, first, the deprivation of right(s) secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Id*. at 397. Lancellotti has properly alleged these two elements with respect to his claim against the BOP.

The Prison Litigation Reform Act, ("PLRA"), codified at Title 42 U.S.C. § 1997e(a), requires state and federal prisoners to exhaust all available administrative remedies before filing suit challenging any aspect of their prison conditions. The four-tiered administrative remedy scheme available to Bureau of Prisons ("BOP") inmates complaining about any aspect of their confinement is set out in the BOP's Administrative Remedy Program, 28 C.F.R. §§ 542.10-542.19.[4]

In his Complaint [R. 2], Lancellotti states that filed administrative remedies that went unanswered by the BOP's Regional and Central Offices, making it impossible for him the exhaust his administrative remedies. Assuming the truthfulness of Lancellotti's statements, the failure of the BOP's Regional and Central Offices to respond to Lancellotti's administrative remedies

---

[4]
The multi-step administrative remedies available to inmates confined in BOP institutions are set out in 28 C.F. R. §542.10-.19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9]. *See* §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel [BP-11]. *See* §542.15.

The administrative procedure includes established response times. §542.18. As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level. *Id.*

effectively renders them exhausted so as to permit him to proceed in this action, as the BOP cannot thwart exhaustion in order to prevent an inmate from pursuing a *Bivens* claim against it. Therefore, on the present record, to the extent that exhaustion of administrative remedies is an issue in this case, it should be decided on a more fully developed record. *See Jones v. Bock*, 549 U.S. 199 (2007).

Consequently, the court will direct the issuance of summons to Deborah A. Hickey, Warden at FMC-Lexington, to respond to the allegations in Lancellotti's Complaint [R. 2] and construed Amended Complaint [R. 11] against the BOP. As Lancellotti has been granted pauper status, an officer of the court will serve process on his behalf pursuant to FED. R. CIV. P. 4(c)(2) and 28 U.S.C. § 1915(d). The Clerk's Office and the Office of the United States Marshal ("USM Office"), therefore, will be directed to serve the summons and complaint as set forth below.

**B.    Negligence/medical malpractice claims**

Lancellotti's claims against Dr. Ali H. Mesiwala, as well as against the remaining defendants, appear to be state law negligence/medical malpractice claims. These claims are addressed below:

1. **Dr. Ali H. Mesiwala -** Dr. Mesiwala is the contract surgeon who performed the original cervical spinal surgery on Lancellotti in California. Based on Lancellotti's allegation that Dr. Mesiwala negligently performed this surgery, necessitating the need for additional, corrective surgery, his claim against Dr. Mesiwala is best characterized as a state law negligence/medical malpractice claim. Lancellotti makes no statement that Dr. Mesiwala has been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The court declines to exercise supplemental jurisdiction over any state law claim that Lancellotti might have against

Dr. Mesiwala and will dismiss that construed negligence/medical malpractice claim without prejudice to Lancellotti's right to refile in state court.

Further, Lancellotti fails to provide any information providing a possible basis as to how a federal court sitting in the Eastern District of Kentucky would have any personal jurisdiction over Dr. Mesiwala, a physician in California, in respect to Lancellotti's state law negligence/medical malpractice claim against him. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316-19 (1945); *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 380 (6th Cir. 1968). *See also Burger King Corp. v. Rudzewski*, 471 U.S. 462, 475-78 (1985). For these reasons, Dr. Ali H. Mesiwala will be dismissed from this action for lack of *in personam* jurisdiction over him.

2. **Unnamed hospital in San Bernardino, California -** Lancellotti fails to provide the name and address of this hospital, as well as any information providing a possible basis as to how a federal court sitting in the Eastern District of Kentucky would have any personal jurisdiction over that hospital in respect to any negligence/medical malpractice claim he might have against it. *See International Shoe Co. v. Washington*, *supra; Southern Machine Co. v. Mohasco Indus.*, supra. *See also Burger King Corp. v. Rudzewski*, *supra.*

For these reasons, this unnamed hospital in San Bernardino, California, will be dismissed from this action for lack of *in personam* jurisdiction over it.

3. **A. Eddleman -** other than a name, Lancellotti fails to provide any information about this named defendant, such as what this person did or did not do that is the basis for Lancellotti's negligence/medical malpractice claim against him or her. For this reason, his claim against A. Eddleman will be dismissed without prejudice to refile in state court.

4. L**exington Medical Center** - other than a name, Lancellotti fails to provide any information about this named defendant, such as what this entity did or did not do that is the basis for Lancellotti's negligence/medical malpractice claim against it. For this reason, his claim against Lexington Medical Center will be dismissed without prejudice to refile in state court.

4. **University of Kentucky Medical Center** - other than a name, Lancellotti fails to provide any information about this named defendant, such as what this entity did or did not do that is the basis for Lancellotti's negligence/medical malpractice claim against it. For this reason, his claim against the University of Kentucky Medical Center will be dismissed without prejudice to refile in state court.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. The court declines to exercise supplemental jurisdiction over Plaintiff's negligence/medical malpractice claims against (a) Dr. Ali H. Mesiwala; (b) an unnamed hospital in San Bernardino, California; (c) A. Eddleman; (d) Lexington Medical Center; and (d) University of Kentucky Medical Center. Plaintiff's state law negligence/medical malpractice claims against these named defendants are **DISMISSED WITHOUT PREJUDICE** to his right to refile in state court.

2. Defendants Dr. Ali H. Mesiwala, a California physician, and an unnamed hospital in San Bernardino, California, are **DISMISSED** from this action for lack of *in personam* jurisdiction over them.

3. Summons shall issue to Deborah A. Hickey, Warden at FMC-Lexington, to respond to Lancellotti's *Bivens* claim that the BOP has been deliberately indifferent to his serious medical needs as alleged in his Complaint [R. 2] and construed Amended Complaint [R. 11].

4. The Clerk of the Court shall prepare the documents necessary for service of process upon Deborah A. Hickey, Warden, FMC-Lexington.

5. The Clerk of the Court shall prepare a "Service Packet" consisting of the following documents for service of process upon the United States of America:

    a. a completed summons form;
    b. the complaint [R. 2] and construed amended complaint [R. 11]
    c. this order; and
    d. a completed USM Form 285.

6. Additionally, the Clerk of the court shall make three sets of copies of the above-described documents, each set containing the following:

    a. copies of all completed summons forms issued for the defendants;
    b. copies of all completed USM Forms 285;
    c. one copy of the Complaint and all attachments [Record No. 2], and amended complaint [R. 11];
    d. one copy of this Order.

7. The Clerk shall present the Service Packet(s) and copies to the USM Office in Lexington, Kentucky.

8. Service of Process upon Deborah A. Hickey, Warden, FMC-Lexington, on behalf of the BOP, shall be conducted by the USM Office in Lexington, Kentucky, by serving a Service Packet *personally* upon the Warden, through arrangement with the Federal Bureau of Prisons.

The USM Office is responsible for ensuring that Warden Hickey is successfully served with process. In the event that an attempt at service upon the Warden is unsuccessful, the USM Office shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

9. The USM Office Service must complete service on Warden Hickey by serving the copies described in above paragraph 6 *by certified or registered mail* to:

      a.      one set of the copies to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

      b.      one set to the Office of the Attorney General of the United States in Washington, D.C.; and

      c.      one set to the Office of the Federal Bureau of Prisons in Washington, D.C.

10. The plaintiff **SHALL**:

      a.      Immediately advise the Clerk's Office of any change in his current mailing address. **Failure to do so may result in dismissal of this case**.

      b.      Communicate with the court *solely* through notices or motions filed with the Clerk's Office. **The court will disregard correspondence sent directly to the judge's chambers.**

      c.      In every notice, motion, or paper filed with the court, certify in writing that he has mailed a copy to every defendant (or his or her attorney) and state the date of mailing. **The court will disregard any notice or motion which does not include this certification.**

This the 16th day of April, 2012.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

8